1  Sebastian Rucci (CA Bar No. 178114)
Law Offices of Sebastian Rucci
2  401 E. Ocean Blvd., Suite 200
Long Beach, CA 90802-4993
3  Phone (562) 901-0199
4  Fax    (562) 901-0599
Cell    (330) 720-0398
5  Email: SebRucci@gmail.com
Attorney for Homeowners Lending Corp
6

7  Ismail Amin (CA Bar No. 231232)
The Amin Law Group, Ltd
8  895 Dove Street, 3d Floor
Newport Beach, CA 92660
9  Phone (949) 955-4966
Fax    (949) 266-8406
10  Email: iAmin@AminLawGroup.com
Attorney for Gerald Sandler
11

12  **UNITED STATES BANKRUPTCY COURT FOR THE**
**CENTRAL DISTRICT OF CALIFORNIA**
13  **SANTA ANA DIVISION**

14  IN RE: HOMEOWNERS LENDING ) Judge Honorable Robert Kwan
CORP                                                  )
15                                                          ) Chap 7 Case No. 8:09-bk-14509-RK
16                                                          )
        DEBTOR,                              ) **NOTICE OF MOTION AND MOTION**
17                                                          ) **FOR SANCTIONS FOR VIOLATION**
                                                           ) **OF THE AUTOMATIC STAY BY**
18                                                          ) **WESTERN THRIFT & LOAN**
19                                                          )
                                                           ) Date: May 11, 2009
20                                                          ) Time: 2:30 p.m.
                                                           ) Place: Courtroom 5D
21                                                          )
22  _____ )

23  TO WESTERN THRIFT AND LOAN AND THEIR ATTORNEYS, RICHARD ELMORE,

24  JAMES ROBERT SMITH, MARK TRAFTON AND KIMBERLY CHATLIN, ESQ.

25      PLEASE TAKE NOTICE THAT on **Tuesday May 11, 2009 at 2:30 p.m.**, or as soon

26  thereafter as the matter may be heard in Department 5D of the above-entitled court located

27  at 411 W. Fourth Street, Santa Ana, CA 92701, debtor Homeowners Lending, and Gerald

28  Sandler, will move the Court for an order of sanctions for violations of the automatic stay.

**MOTION BY DEBTOR AND GERALD SANDER
FOR SANCTIONS FOR VIOLATION OF THE AUTOMATIC STAY
BY CREDITOR WESTERN THRIFT AND LOAN**

COMES NOW debtor Homeowners Lending and Gerald Sandler and pursuant to 11

U.S.C. § 362(a) seek damages for contempt of court for violation of the automatic stay and

in support state as follows:

On May 14, 2009 Homeowners Lending Corp ("Homeowners" or "Homeowners

Lending" or "Debtor") filed a voluntary chapter 7 petition in this court. Western Thrift and

Loan ("Western Thrift") is identified as creditor in the bankruptcy petition with a $3.5

million unsecured claim against Homeowners. Gerald Sandler is Homeowners president.

On March 9, 2010 and again on April 2, 2010 Western Thrift filed and served two

post-petition state complaints seeking damages against Homeowners and Gerald Sandler

without first obtaining relief from automatic stay. They also sought a $7.5 million pre-

judgment writ of attachment from Gerald Sandler. The two cases were removed to the

District Court in Nevada and motions to transfer to this court have been filed.

Western Thrift's willful violation of the automatic stay strikes at heart of the

Bankruptcy Code, and Homeowners Lending and Gerald Sandler seek damages including

attorneys fees for contempt of court for violation of the automatic stay.

1.   **THE FIRST POST-PETITION STATE COURT LAWSUIT BY WESTERN
     THRIFT IN VIOLATION OF THE AUTOMATIC STAY**.

On March 9, 2010 Western Thrift served a civil complaint on Gerald Sandler, which

they filed in Clark County Nevada, titled *Western Thrift and Loan vs. American Nationwide

Mortgage, Inc., et. al.*, case number A10-607343. (The Complaint is attached as Exhibit A).

Western Thrift is clearly aware of the bankruptcy, as paragraph 58 states that "Homeowners

Lending filed for bankruptcy." On March 29, 2010 the case was removed to the U.S. District

Court for Nevada pursuant to 28 U.S.C. § 1452(a) ("removal of claims related to bankruptcy

cases"). After the case was removed, Western Thrift continued to pretend that the removal

to the District Court was of no consequence by filing an amended complaint in the state court

trying to mask the fact that they were seeking damages against debtors in bankruptcy.

1    On April 12, 2010 Debtor and Gerald Sandler filed a motion to transfer venue to the

2  Central District of California pursuant to 28 U.S.C. § 1412 (transfer bankruptcy case "in the

3  interest of justice or for the convenience of the parties.")

4  2.    **THE SECOND POST-PETITION STATE COURT LAWSUIT BY WESTERN THRIFT IN VIOLATION OF THE AUTOMATIC STAY**.

5
     On April 2, 2010 Western Thrift served a civil complaint on Homeowners Lending
6
   and Gerald Sandler, which they filed in the Clark County Nevada state court, titled *Western*
7
   *Thrift and Loan v. Homeowners Lending Corp., et. al.*, case number A10-612374-C. (The
8
   Complaint is <u>attached as Exhibit B</u>). Western also served a pre-judgment writ of attachment
9
   seeking $7.5 million from Gerald Sandler and set a hearing on the writ for April 15, 2010.
10
   (The Writ is <u>attached as Exhibit C</u>)
11
     On April 5, 2010 the case was removed to the United States District Court for Nevada
12
   pursuant to 28 U.S.C. § 1452(a). On April 12, 2010 Debtor and Gerald Sandler filed a motion
13
   to transfer venue to the Central District of California pursuant to 28 U.S.C. § 1412.
14
15 3.    **THE WILLFUL VIOLATION OF THE AUTOMATIC STAY REQUIRES DAMAGES INCLUDING PUNITIVE DAMAGES**.

16    "When a debtor files for bankruptcy, he is immediately protected by an automatic

17  stay" under 11 U.S.C. § 362(a) which "operates as a stay, applicable to all entities, of the

18  commencement" of a "judicial" proceeding "against the debtor." *Sternberg v. Johnston*, 595

19  F.3d 937, 944 (9th Cir. 2009). The "automatic stay imposes on non-debtor parties an

20  affirmative duty of compliance." *Id.* "One of those purposes is to protect the debtor from

21  having to convince a state court judge that the state court matter should not proceed.

22  Although state court judges generally refrain from proceeding once they are made aware of

23  a bankruptcy filing, the <u>burden is on the creditor not to seek relief against a debtor in</u>

24  <u>violation of the stay</u>." *In re Sutton*, 250 B.R. 771, 774 (Bankr. S.D. Fla. 2000).

25    In *In re Roman*, 283 B.R. 1, 4 (B.A.P. 9th Cir. 2002) "attorneys for the creditor [ ]

26  violated the automatic stay by filing a postpetition state court lawsuit against the debtor." In

27  *Eskanos & Adler, P.C. v. Somkiat G. Leetien*, 309 F. 3d. 1210 (9th Cir. 2002) a law firm

28  waited 23 days after they learned of the debtor's bankruptcy to dismiss the action. *Id.* at 1212.

1    The Ninth Circuit held that § 362(a)(1) imposed an "affirmative duty" on the law firm to

2    discontinue the action once it gained knowledge of the bankruptcy. *Id.* at 1214-15. The "risk

3    of default judgment looms over the debtor throughout." *Id.* at 1214. The court affirmed actual

4    damages "including costs and attorneys fees" for willful violation of the stay. *Id.* at 1216.

5    4.      **THE POST-PETITION COMPLAINTS FILED WITHOUT RELIEF FROM
             STAY SEEK DAMAGES FOR CORPORATE OBLIGATIONS BEING**
6            **ADMINISTERED BY THIS COURT**.

7           The claims in both post-petition state court complaints arise from the principal

8    agreement between Western Thrift and Homeowners. (Agreement attached as Ex. D). The

9    March 9, 2010 complaint states that on "July 2007, Western and Homeowners [] entered into

10   a Service Agreement." (Ex. A Compl. ¶ 23). The Agreement provides that Homeowners

11   "shall defend, indemnify and hold Western and its agents harmless from and against-any and

12   all liability, loss, expense, attorneys' fee, or claims for injury or damage arising out of the

13   performance of the 2007 Service Agreement . . ." (*Id.* ¶ 24). Homeowners has "breached the

14   Service Agreement" and "as a result of the breach of contract" by Homeowners "Western has

15   suffered damages" and is "entitled to recover" damages from Homeowners. (*Id.* ¶ 76-78).

16          The first and third claim seek equitable indemnification and contribution from Sandler

17   and Homeowners. (Compl. ¶ 59-71). The second claim seeks contractual indemnification

18   from Sandler and Homeowners. (Compl. at ¶ 65-67).[1] The fourth claim seeks breach of

19   contract damages from Sandler and Homeowners. (Compl. at ¶ 76-78).[2] The ninth claim

20   seeks unjust enrichment from Sandler and Homeowners. (Compl. at ¶ 106-108).[3]

21   _____

22          [1] "Sandler, Homeowners [ ] are required to hold Western harmless. . . Western is
     entitled to indemnification from Sandler, Homeowners. . ." (Compl. at ¶ 65-67).
23

24          [2] "Sandler, Homeowners, [ ] have breached the Service Agreement" and as a "result
     of the breach of contract by Sandler, Homeowners" Western "has suffered damages. Western
25   is entitled to recover its attorneys' fees and costs from Sandler, Homeowners." (¶ 76-78).

26          [3] "It would be unjust and inequitable for [] Homeowners, Sandler, [ ] to be allowed
27   to retain the benefit that was conferred upon them by Western. Western is entitled to an order
     of this Court granting judgment in the sum of the value conferred upon [ ] Homeowners, []
28   , Sandler, [ ] for which reimbursement was not provided as alleged herein." (¶ 106-108).

1    The April 2, 2010 complaint also confirms the creation of the Agreement and quotes

2  from two provisions of the Agreement. "Any loans required to be repurchased under any

3  contracts or agreements with lenders are <u>the sole responsibility of Homeowners Lending</u>

4  whether fraud, first payment default, and/or any other reasons mandating the repurchases."

5  (Ex. B Compl. ¶ 12). "<u>Homeowners Lending shall defend, indemnify</u> and hold Western

6  Thrift . . . from the negligent or intentional acts or omissions of Homeowners Lending its

7  officers, agents or employees." (*Id.* ¶ 23). Homeowners "breached their agreement with

8  Western when they failed and refused to reimburse Western" for repurchasing loans

9  "pursuant to the express terms of the Service Agreement. (*Id.* ¶ 42).

10    Western Thrift is listed as an unsecured creditor in the bankruptcy petition with a $3.5

11  million unsecured claim. The purported liabilities against Homeowners alleged in both post-

12  petition complaints, filed without relief from stay, are subject to the ongoing adjudication in

13  this court. The breach of contract issues alleged in the post-petition complaints are

14  quintessential matters within this courts jurisdiction. 11 U.S.C. § 365.

15  5.    **THE POST-PETITION COMPLAINTS SEEKS PERSONAL LIABILITY ON**
       **GERALD SANDLER FOR CORPORATE OBLIGATIONS BEING**
16     **ADMINISTERED IN THIS COURT**.

17    The Agreement is clear that any mortgage repurchases are "the sole responsibility of

18  Homeowners Lending." (Ex. B Compl. ¶ 12). "<u>Homeowners Lending shall defend, indemnify</u>

19  and hold Western Thrift." (*Id.* ¶ 23). Nonetheless, Western seeks to impose liability on

20  Gerald Sandler for Homeowners corporate obligations in direct defiance of the Agreement.

21    The recitals to the Agreement confirm that Western Thrift and Homeowners are the

22  only two parties to the Agreement. The word "parties" is used 35 times and each instance it

23  refers to the two parties only.[4] The Agreement is "<u>binding on the parties</u> to this Agreement."

24  _____

25    [4] "<u>Both parties</u> agree that" (Agmt ¶ 2.1); "It is understood and agreed by <u>both parties</u>
   that" (Agmt ¶ 7.2); "<u>the party</u> desiring to sell shall deliver <u>to the other party</u>" (Agmt ¶ 8.2);
26  "upon notice given by <u>either party</u> to the other in writing" (Agmt ¶ 9.1); "termination of this
   Agreement by <u>either party</u>" (Agmt ¶ 9.2); "<u>Neither party</u> may...without the written <u>consent</u>
27  <u>of the other</u>." (Agmt ¶ 11.6); "<u>Both parties</u> agree that" (Agmt ¶ 11.9); "<u>both parties</u> agree to
   return all" (Agmt ¶ 11.10); "<u>both parties</u> agree to return . . to the other." (Agmt ¶ 11.11);
28  "party breaching the agreement shall pay the <u>other party</u> a penalty." (Agmt ¶ 11.11).

1  (Agmt ¶ 11.2) The parties to the agreement are Western and Homeowners. "This Agreement

2  has no relation to any operations conducted by either party individually or as a joint party

3  with others." (Agmt ¶ 7.2). This "agreement does not create an employment relationship

4  between loan associates, and others involved in the Mortgage Loan Business." (Agmt ¶ 1.4).

5        All liability falls on Homeowners and not Gerald Sandler who is not a party to the

6  Agreement. "Any loans required to be repurchased under any contracts or agreements with

7  lenders are <u>the sole responsibility of Homeowners Lending</u>, . . .any penalty and/or 'pair-off'

8  fees for not fulfilling any forward commitment are the sole, responsibility of Homeowners

9  Lending." (Agmt ¶ 2.1). "If any amounts become due as a result of a required repurchase,

10  penalty, or Pair-off fees, Homeowners Lending will pay such amounts." (Agmt ¶ 2.1)

11  "<u>Homeowners Lending shall</u> be responsible for the payment of its pro-rata share of any

12  additional costs that Western Thrift incurs as a direct result of this Service Agreement."

13  (Agmt ¶ 4.3). A "Reserve Fund has been established. . . to guarantee that Homeowners

14  Lending shall fulfill any and all <u>obligations created by Homeowners Lending</u>. Should

15  Homeowners Lending, for any reason, <u>not fulfill its obligations</u>, Western Thrift shall . . .

16  withdraw and use money from the Reserve Fund to satisfy those <u>obligations created by</u>

17  <u>Homeowners Lending</u>." (Agmt ¶ 5.4).

18        The Agreement provides that the "laws of the State of Nevada will govern" any

19  "interpretation, and performance of this Agreement." (Agmt ¶ 11.3). Nevada law provides

20  if "a signer both identifies the principal on whose behalf he is signing and discloses the

21  representative capacity in which he is signing, his or her <u>signature does not create personal</u>

22  <u>liability in the signer</u>. Ergo, because the subject promissory note identified the principal and

23  revealed the corporate capacity in which he signed, the individual is not liable on the note."

24  *Threlkel v. Shenanigan's*, 110 Nev. 1088, 1090 (1994).

25        In *Trident Constr. Corp. v. W. Elec., Inc*., 105 Nev. 423, 428 (1989) the Nevada

26  Supreme Court held that an individual was not personally liable where he signed individually

27  instead of in his corporate capacity. The court stated that "failure of the officer signing a

28  contract to add their title of office is not ordinarily fatal to the validity of a corporate contract.

1  Where the contract on its face is a contract of the corporation . . . If the intent to make a

2  corporate contract appears from the acts of the parties and the entire circumstances taken

3  together with the subject matter of the deal, a corporate officer signing in his individual name

4  only does not necessarily show that the person was acting in other than his official capacity

5  for the corporation." The court noted that the agreement expressly obligated the Corporation

6  and was looking to the corporation for payment, not to the individual personally. *Id.* at 429.

7       The post-petition complaint by Western Thrift seeks to impose liability on Gerald

8  Sandler in defiance of the unambiguous language of the Agreement. Because the "plaintiff

9  alleges liability resulting from the joint conduct of the debtor and non-debtor defendants,

10  bankruptcy jurisdiction exists over all claims under section 1334." *Wood v. Wood (In re*

11  *Wood)*, 825 F.2d 90, 94 (5th Cir. 1987). See *In re Opti-Gage, Inc.*, 128 B.R. 189, 195 (Bankr.

12  S.D. Ohio 1991) (finding related jurisdiction based on allegations of liability based on joint

13  conduct.) Even if the debtor is not named in the suit jurisdiction under § 1334(b) may exist.

14  See *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 n.5 (1995) (noting that § 1334(b) applies

15  to "suits between third parties which have an effect on the bankruptcy estate"). The

16  proceeding "need not necessarily be against the debtor." *In re Fietz*, 852 F.2d 455, 457 (9th

17  Cir. 1988).  See *Kaonohi Ohana, Ltd. v. Sutherland*, 873 F.2d 1302, 1306-07 (9th Cir. 1989)

18  (jurisdiction existed because this "nondebtor litigation may directly affect the estate's

19  obligation to creditors whose claims are currently before the bankruptcy court.")

20       The Agreement provides that "Homeowners Lending shall defend, indemnify and hold

21  Western Thrift, its officers" for damages caused by Homeowners Lending's "officers."

22  (Compl. ¶ 23). "Courts in the Ninth Circuit have held that a defendant's claim for contractual

23  indemnity against an entity in bankruptcy gives rise to 'related to' jurisdiction." *Carpenters*

24  *Pension Trust v. Ebbers*, 299 B.R. 610, 613 (Bankr. C.D. Cal. 2003). See also, *Belcufine v.*

25  *Aloe*, 112 F.3d 633, 636 (3d Cir. 1997) (affirming jurisdiction due to obligation on company

26  to indemnify officer). Moreover, the right of indemnification need not arise out of an

27  unconditional contractual agreement. See *In re Sizzler Restaurants Int'l, Inc.*, 262 B.R. 811,

28  818-819 (Bankr. C.D. Cal. 2001) (indemnification provides adequate basis for jurisdiction).

1   Additionally, Homeowners Lending would be bound by any interpretation of the

2   Agreement in a case solely against Gerald Sandler and this potential application of res

3   judicata or collateral estoppel has an effect on the estate and must be decided by this Court.

4   Western Thrift is listed as creditor in the bankruptcy petition with a $3.5 million

5   unsecured claim. Because a judgment against Gerald Sandler directly affects the Debtor the

6   resolution of the purported post-petition claims against Gerald Sandler are subject to the

7   ongoing adjudication in this court.

8   6.    **THE WILLFULLY VIOLATION OF THE AUTOMATIC VOIDS THE STATE
        COMPLAINTS AND REQUIRES PAYMENT OF DAMAGES AND COSTS**.

9

10   Western has "violated the automatic stay by filing a postpetition state court lawsuit

    against the debtor." *Eskanos & Adler, P.C. v. Roman (In re Roman)*, 283 B.R. 1, 4 (B.A.P.
11
    9th Cir. 2002). Western Thrift has received numerous filings from this court during the past
12
    eleven months and keenly aware of Homeowner Lending's bankruptcy filing. The March 9,
13
    2010 complaint notes that "Homeowners Lending filed for bankruptcy." (Ex.A Compl. ¶ 58).
14
    The "automatic stay imposes" an "affirmative duty of compliance" on Western Thrift.
15
    *Sternberg v. Johnston*, 595 F.3d 937, 944 (9th Cir. 2009). This requires immediate dismissal
16
    of any post-petition state court lawsuits. Western Thrift clearly does not understand this
17
    because they filed not one but two state complaints and compounded this with a whopping
18
    $7.5 million pre-judgment writ of attachment against a related party based on the debtors
19
    corporate obligations. This conduct is so oppressive as to require punitive damages. See 11
20
    U.S.C. § 362(k)(1) ("willful violation of a stay provided by this section shall recover actual
21
    damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover
22
    punitive damages."); *In re M & J Feed Mill, Inc.*, 112 B.R. 985, 990 (Bankr. W.D. Mo. 1990)
23
    (awarding $6,000 in punitive damages for a violation of the automatic stay).
24
    Western Thrift has proceeded with a zealous attempt to obtain judgments against the
25
    Debtor and related parties and they bear the risk of all intentional acts that violate the
26
    automatic stay. *In re Campion*, 294 B.R. 313, 318 (B.A.P. 9th Cir. 2003). The post-petition
27
    complaints are in contravention of the automatic stay and have forced Homeowners and
28
    Gerlad Sandler to engage legal representation to remove and transfer the state complaints to

1  this court, and to file this motion for contempt of court for violating the automatic stay.

2  Homeowners and Gerald Sandler seek sanctions for contempt of court for violation of the

3  automatic stay including, prompt payment of all attorneys fees and costs expended to remove,

4  and transfer the post-petition state complaints to this court and the filing of this and any

5  related motions to halt Western Thrifts violation of the stay.

6      Additionally, "violations of the automatic stay are void and of no effect." *Schwartz*

7  *v. United States (In re Schwartz)*, 954 F.2d 569, 572 (9th Cir. 1992). Accordingly,

8  Homeowners and Gerald Sandler seek an order that all actions taken by Western Thrift and

9  their attorneys in violation of the automatic stay, including the filing of the two state

10 complaint and pre-judgment writ of attachment, are void and of no effect.

11     WHEREFORE, Homeowners Lending and Gerald Sandler respectfully pray that this

12 Honorable Court award them their attorneys fees and costs due to their having to defend the

13 post-petition state court lawsuit by Western Thrift and for an order that the same are void.

14

15 Respectfully submitted,                    Respectfully submitted,

16

17 /s/ Sebastian Rucci                        /s/ Ismail Amin

18 Sebastian Rucci (CA Bar No. 178114)        Ismail Amin (CA Bar No. 231232)

19 Attorney for Homeowners Lending Corp       Attorney for Gerald Sandler

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2   I hereby certify that on April 13, 2010, a copy of the foregoing was filed

3   electronically. Notice of this filing will be sent to all parties via the Court's electronic filing

4   system and parties may access this filing through the Court's Case management/Electronic

5   Case Files (CM/ECF) found on the internet at https://ecf.cacb.uscourts.gov/.

6   Copies of the foregoing was also emailed to Western Thrifts attorneys on April 13,

7   2010 at 12:30 pm:

8   Richard Elmore at relmore@hollandhart.com;

9   James Robert Smith at jrsmith@hollandhart.com;

10   Mark Trafton at Karen.Walker@belltransportation.com;

11   Kimberly Chatlin at KChatlin@CableOne.net

12

13

14   /s/ Sebastian Rucci
Sebastian Rucci

15

16

17

18

19

20

21

22

23

24

25

26

27

28